UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NANCY BEK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 18-11096-DHH |
| WELLS FARGO HOME MORTGAGE, et al. | ) | |
| Defendants. | ) | |

# ORDER

**September 7, 2018**

Hennessy, M.J.

This matter comes before the Court on Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Wilmington Trust Company's, not in its individual capacity but solely as Successor Trustee to U.S. Bank National Association, as Trustee, for MASTR Alternative Loan Trust 2005-3[1] ("Wilmington Trust") motion to dismiss. (Docket #14). Plaintiff Nancy Bek has filed an opposition to the motion. (Docket #23). Also before the court is Bek's motion for a temporary restraining order and preliminary injunction. (Docket #24). Defendants have filed an opposition to that motion. (Docket #26). A hearing on all pending motions was held on August 29, 2018. These matters are now ripe for adjudication. For the reasons that follow, the motion to dismiss (Docket #14) is ALLOWED and the motion for injunctive relief (Docket #24) is DENIED.

---

[1] Bek incorrectly identifies this defendant in the Amended Complaint as "Wilmington Trust Company as Successor Trustee to U.S. Bank National Association as Successor in Interest to Wachovia Bank, N.A. as Trustee for the Holders of Master Alternative Loan Trust 2005-3." (Docket #8).

I. BACKGROUND

On January 6, 2005, Bek purchased property located at 20 Windsor Street in Worcester, Massachusetts (the "Property"). (Docket #8 at ¶ 6). To finance the purchase of the Property, Bek executed a promissory note that same day in the amount of $245,000 (the "Note"). (Docket #15-1). The Note identifies the original lender as "Ohio Savings Bank." (Id. at 1). To secure repayment of the Note, Bek also executed a mortgage on January 6, 2005 (the "Mortgage"), which was recorded at the Worcester County Registry of Deeds in book 35503, Page 308.[2] (Docket #15-2). The Mortgage identifies the original mortgagee as "Mortgage Electronic Registration Systems, Inc." ("MERS") and has a stated maturity date of January 1, 2035. (Id. at 1).

In April of 2007, Ohio Savings Bank changed its name to AmTrust Bank. (Docket #8 at ¶ 13). Subsequently, as a result of bank failure, AmTrust Bank was shut down by the Office of Thrift Supervision and placed into receivership with the Federal Deposit Insurance Corporation on December 4, 2009. (Id.). AmTrust Bank's assets were sold to New York Community Bank. (Id.).

On January 27, 2010, counsel retained by Wells Fargo sent Bek a letter noting that it had been retained by Wells Fargo to foreclose on the Mortgage. (Docket #11 at 10-11). The letter notified Bek that the Note was hereby accelerated and the entire balance was due and payable forthwith and without further notice. (Id. at 10). The letter stated that there was outstanding $232,608.57 in principal and $24,807.92 in interest and other charges for a total outstanding balance of $257,416.49. (Id.).

---

[2] Bek executed the Mortgage with Francis Segbefia as tenants in common and Segbefia was a signatory to the Note. (Dockets #15-1, 15-2).

On January 28, 2010, MERS assigned the Mortgage to "Wilmington Trust Company as Successor Trustee to US Bank National Association as successor in interest to Wachovia Bank, N.A. as trustee for the holders of Mastr Alternative Loan Trust 2005-3," said assignee having an address of "1100 North Market Street, Wilmington DE 19801," in an assignment that was recorded in the Registry at Book 45416, Page 362 (the "Jan. 28, 2010 Assignment"). (Docket #15-3).

Bek received a letter on February 23, 2010 from Wells Fargo demanding payment of $3,565.23. (Docket #8 at ¶ 17). On November 4, 2010, Bek was put into foreclosure. (Id. at ¶ 19). Bek requested a loan modification. (Id. at ¶ 20). Wells Fargo responded with a demand of $4,500. (Id.). Following the demand, Bek made three payments; however, because the third payment arrived a day late, Wells Fargo denied the modification. (Id. at ¶¶ 21-22). Wells Fargo retained the $4,500 paid by Bek. (Id. at ¶ 23). On January 14, 2011, Bek received a letter from Wells Fargo that the foreclosure sale had been cancelled. (Id. at ¶ 24). On February 16, 2011, Bek received a letter from Wells Fargo scheduling a sale of the property on March 16, 2011, which was later rescheduled to April 18, 2012. (Id. at ¶¶ 25-27). Bek filed for bankruptcy on April 17, 2012. (Id. at ¶ 28).

On May 7, 2012, MERS, "as nominee for Ohio Savings Bank, its successors and assigns," issued a subsequent assignment, recorded in the Registry at Book 48935, Page 337, assigning the Mortgage to the same assignee as the Jan. 28, 2010 Assignment, but this time explaining that the assignee's address was "Rodney Square North, Wilmington, DE 19890-0001" (the "May 7, 2012 Assignment"). (Docket #15-4).

Bek's bankruptcy action was dismissed on December 14, 2012. (Docket #8 at ¶ 31).

On October 2, 2017, in what was labeled a "Corrective Assignment of Mortgage," recorded in the Registry at Book 57841, Page 396, MERS, "as nominee for Ohio Savings Bank, its successors and assigns," assigned the Mortgage to "Wilmington Trust Company, not in its individual capacity but solely as successor trustee to U.S. Bank National Association, as trustee, for MASTR Alternative Loan Trust 2005-3 at Rodney Square North, Wilmington, DE 19890-0001" (the October 2, 2017 Assignment"). (Docket #15-5). MERS clarified that the assignment was being recorded to amend the May 7, 2012 Assignment, which incorrectly showed the assignee name. (Id. at 2).

Wells Fargo, acting as loan servicer for Wilmington Trust, executed an affidavit pursuant to Mass. Gen. Laws ch. 244, §§ 35B and 35C (the "Pre-Foreclosure Affidavit") on November 30, 2017, which was recorded in the Registry at Book 58219, Page 299. (Docket #15-6).

Bek received a notice of foreclosure sale of the Property dated April 11, 2018. (Docket #11 at 20-21). On May 14, 2018, Bek filed suit against the Defendants in Worcester Superior Court. With the complaint, Bek filed an ex parte motion for a temporary restraining order and injunction seeking to enjoin the foreclosure sale. (Id. at 36-37). The Superior Court issued a temporary restraining order and set a further hearing for May 24, 2018. (Id. at 36). Prior to the hearing, on May 23, 2018, Defendants removed the action to this court. (Docket #1).

Bek filed an amended complaint on June 6, 2018. (Docket #8). In an assented-to motion seeking an extension to file their answer, Defendants represented that they had agreed to postpone the foreclosure sale until August 9, 2018. (Docket #9). On June 29, 2018, Defendants filed the instant motion to dismiss. (Docket #14). Bek responded to the motion on August 1, 2018. (Docket #23). On August 6, 2018, Bek filed a motion for preliminary injunction, seeking to enjoin the foreclosure sale of the Property scheduled for August 9, 2018. (Docket #24). On

August 7, 2018, the court scheduled a hearing on the motion for August 8, 2018. (Docket #25). Later that day, Defendants filed their opposition to the motion for preliminary injunction. (Docket #26). At a hearing on the preliminary injunction motion on August 8, 2018, the parties agreed to postpone the auction following a hearing on all pending motions on August 28, 2018. (Docket #29).

II. STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (quoting Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

To survive a motion to dismiss, a plaintiff must "state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . [t]he threshold for stating a claim may be low, but it is real." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Research, Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings").

Although the complaint need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, it must "amplify a claim with some factual allegations . . . to render the claim plausible," Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007). Thus, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the] plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Though most motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are "premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson v.

Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defenses are definitely ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

III. ANALYSIS

Bek advances six legal theories against Defendants in her amended complaint. In count II, Bek alleges that Defendants engaged in fraudulent conduct. (Docket #8 at ¶¶ 48-51). Bek asserts a claim against Defendants for breach of fiduciary duty in count III. (Id. at ¶¶ 52-57). In count IV, Bek seeks a declaration that Defendants are precluded from foreclosing on the Property because Defendants have not produced the original Note, in violation of Mass. Gen. Laws ch. 244, § 14, the Mortgage has expired under the Obsolete Mortgage Statute, Wells Fargo failed to make good-faith efforts to avoid foreclosure pursuant to Mass. Gen. Laws ch. 244, § 35B, and Wilmington Trust is not the mortgagee based upon an allegedly invalid series of assignments. (Id. at ¶¶ 58-59). On the basis of the legal theories in counts II through IV, Bek seeks injunctive relief to halt the foreclosure in count I. (Id. at ¶¶ 43-47). Defendants seek dismissal on all counts of the amended complaint.

A. Count II – Fraud

"Under Massachusetts law, fraud requires that the defendant make a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 357 (1st Cir. 2013) (citing Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)). Federal Rule of Civil Procedure 9(b) also requires that a party alleging fraud "must

7

state with particularity the circumstances constituting fraud or mistake." "This heightened pleading standard is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).

Bek's amended complaint clearly fails to meet the particularity requirement of Rule 9(b). The court was unable to determine from the amended complaint which statements were alleged to be fraudulent, much less who made them, or when or where they were made. Count II merely alleges that "The Defendants have made, [sic] made false statements and misrepresentations to the Plaintiff, as set forth above, concerning his [sic] the foreclosure of the subject property as well as the ability to modify the mortgage." (Docket #8 at ¶ 47). At the hearing, the court was required to take the extreme step of having Bek point out exactly where in the amended complaint the fraudulent statements were located, which, on its own, demonstrates a failure to comply with Rule 9(b). Bek asserted that the factual allegations of paragraphs 15-16, 22, 30, and 36 evidenced the fraudulent statements. However, these allegations also fail the particularity requirements of Rule 9(b). They do not indicate who made the statement, when they were made, or where.

Additionally, a claim of fraud based on these statements is barred by the statute of limitations. In Massachusetts, fraud claims are subject to a three-year statute of limitations. Mass. Gen. Laws ch. 260, § 2A; Stolzoff v. Waste Sys. Int'l, 58 Mass. App. Ct. 747, 755-56 (2003). While it is unclear when exactly the allegedly fraudulent statements were made, the amended complaint's timeline establishes that these statements were necessarily made prior to December 14, 2012. (See Docket #8 at ¶¶ 15-31). At the hearing, Bek argued that the statute of

limitations had not yet started to run on her fraud claims because no injury would occur until the foreclosure sale of the Property. Bek provided no legal support for this argument, nor is this court aware of any.

Bek also argued at the hearing that the factual allegations of paragraph 36 of the amended complaint evidence a fraudulent statement. This paragraph asserts that although Defendants labeled the October 2, 2017 Assignment a "Corrective Assignment of Mortgage," it was invalid and legally ineffective to demonstrate a valid chain of title running to the purported foreclosing entity. (Docket #8 at ¶ 36). However, as explained by the Court in Section C.4 below, the October 2, 2017 Assignment was effective. Hence, the statement was not false and, therefore, not actionable. See Woods, 733 F.3d at 357.

Therefore, the court hereby allows the motion to dismiss with respect to count II of the amended complaint.

B. Count III – Breach of Fiduciary Duty

In her amended complaint, Bek asserts that Defendants' failure to grant her a loan modification and refusal to return the $4,500 she paid in an attempt to obtain the loan modification constitutes a breach of fiduciary duty. (Docket #8 at ¶¶ 52-57). Defendants seek to dismiss this count arguing that they owed no fiduciary duties to Bek. (Docket #15 at 6).

"[T]he concept of good faith is shaped by the nature of the contractual relationship from which the implied covenant derives, and the scope of the covenant is only as broad as the contract that governs the particular relationship." Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013)). Here, the only contract between the parties alleged by Bek is the Mortgage. (See Docket #8). Nothing in the Mortgage imposes a duty on Defendants to consider a loan modification.

(See Docket #15-2). "Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." Mackenzie, 738 F.3d at 493 (quoting Peterson v. GMAC Mortg., LLC, No. 11-cv-11115, 2011 U.S. Dist. LEXIS 123216, at *17 (D. Mass. Oct. 25, 2011).

A fiduciary relationship may also arise between a lender and borrower if "a lender both knows that a borrower is placing her trust in it and accepts that trust." Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 40 (D. Mass. 2006). In the amended complaint, Bek makes the bare assertion that "Defendant's [sic] were aware that Plaintiff was reposing her trust and confidence in them and were [sic] relying on the Defendant's [sic] with respect to granting a loan modification." (Docket #8 at ¶ 54). Bek then asserts that Defendants "owed the Plaintiff a fiduciary duty by virtue of the trust and reliance that she placed in them and Defendants [sic] knowledge and acceptance of such trust and reliance." (Docket #8 at ¶ 55). However, Bek fails to allege any facts that would indicate a special relationship between the parties; instead the facts demonstrate a standard borrower-lender relationship. As Defendants correctly argue, merely alleging the existence of a "special relationship" does not survive scrutiny under Rule 12(b)(6). See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' . . . 'will not do.'") (quoting Twombly, 550 U.S. at 555).

As there exists neither a contractual obligation for Defendants to consider a loan modification nor a special relationship between Bek and Defendants beyond that of borrower-lender, the court finds that Defendants did not owe any fiduciary duties to Bek and allows the motion to dismiss with respect to count III.

C. Count IV – Declaratory Judgment

1. Failure to Produce Original Note

In her amended complaint, Bek argues that Defendants are not entitled to foreclose on the Property as they do not possess and cannot produce the original Note as required by Massachusetts General Laws chapter 244, section 14. (Docket #8 at ¶ 59). "A foreclosure sale conducted pursuant to a power of sale in a mortgage must comply with all applicable statutory provisions, including in particular . . . Massachusetts General Laws ch. 244, 14." Eaton v. Fannie Mae, 462 Mass. 569, 570 (2012). Section 14 prescribes the form and method of publication of notice prior to an effective foreclosure sale. It provides that, when a mortgagee holds a mortgage pursuant to an assignment, a notice under section 14 is only valid if:

> (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section.

Mass. Gen. Laws ch. 244, § 14. Nothing in this section references the need to produce or possess the original Note, which Bek admitted at the hearing.

The regulation interpreting the statute also does not contain such a requirement. See 209 C.M.R. 18.21A. Instead, Massachusetts law requires that a third party loan servicer provide a "certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon" and "a copy of the note with all required endorsements." 209 C.M.R. 18.21A(2)(c). Defendants complied with this regulation by recording and serving the Pre-Foreclosure Affidavit, which certifies the chain of mortgage assignments and Wilmington Trust's status as the foreclosing mortgagee and note holder and providing Bek with a copy of the Note. (See Dockets #11 at 24-26; 15-6).

11

At the hearing, Bek also argued that the Uniform Commercial Code ("UCC") required Defendant to produce the original Note. When questioned as to where in the UCC such a requirement could be found, Bek was only able to suggest that the provision was found in Article 9. Nor does she provide any citation to a provision of the UCC in her opposition to the motion to dismiss. Bek's argument fails to comply with Local Rule 7.1(b)(2), which requires a party opposing a motion to file "a memorandum of reasons, including citation of supporting authorities, why the motion should not be granted."

Bek has failed to provide any authority for the proposition that Defendants must possess and produce the original Note prior to foreclosing on the Property. Bek is not entitled to a declaratory judgment on this basis.[3]

2. The Obsolete Mortgage Act

In count IV of her amended complaint, Bek also seeks a declaration that, under the Obsolete Mortgage Statute, Mass. Gen. Laws ch. 260, § 33, the Mortgage is no longer enforceable. (Docket #8 at ¶ 59). The Obsolete Mortgage Statue provides, in relevant part:

> A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of, in the case of a mortgage in which no term of the mortgage is stated, 35 years from the recording of the mortgage or, in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period.

Mass. Gen. Laws ch. 260, § 33. Bek argues that the Defendants' acceleration of the Note on January 27, 2010 also served to accelerate the maturity date of the Mortgage to that same date, thereby rendering the Mortgage obsolete five years later. (Docket #23 at 9). However, the First Circuit has recently held that there is no suggestion in the statute that the acceleration of a note

---

[3] While not germane at the motion to dismiss stage, Defendants produced the original Note at hearing on August 29, 2018.

has any impact on the limitations period for a mortgagee's right to foreclose. Harry v. Countrywide Home Loans, Inc., Nos. 16-2380, 17-1101, 2018 U.S. App. LEXIS 23847, at * 4 (1st Cir. Aug. 23, 2018); see also Estate of Junior v. Wells Fargo Bank, N.A., No. 17-10460-RGS, 2017 U.S. Dist. LEXIS 55534, at *2-3 (D. Mass. Mar. 30, 2017) (noting that plaintiff's argument that the acceleration of the note also accelerated the maturity date of a mortgage had been "squarely rejected" by three other judges of this court and holding the same). This court is bound by the First Circuit's decision in Harry v. Countrywide Home Loans, Inc., and finds that the acceleration of Bek's Note has not rendered the Mortgage obsolete.

3. Failure to Comply with Massachusetts General Laws chapter 244, section 35B

Bek also seeks a declaration that Defendants have failed to make a good faith offer to modify the Mortgage in violation of Massachusetts General Laws chapter 244, section 35B and, therefore, are precluded from foreclosing on the Property. (Docket #8 at ¶ 59). Section 35B does not require a lender to modify a loan, instead it requires a creditor to first take reasonable steps and make a good faith effort to avoid foreclosure before causing publication of a notice of a foreclosure sale.[4] Mass. Gen. Laws ch. 244, § 35B(b). A creditor is deemed to have taken reasonable steps and made a good faith effort to avoid foreclosure if the creditor has considered:

> (i) An assessment of the borrower's ability to make an affordable monthly payment; (ii) the net present value of receiving payments under a modified mortgage loan as compared to the anticipated net recovery following foreclosure; and (iii) the interest of the creditor, including, but not limited to, investors.

Id. Bek has not alleged that Defendants failed to consider any of the above factors; she bases her claim only on the Defendants' alleged failure to make her an offer to modify the Mortgage. The statute does not contemplate such a requirement. Similarly, Bek points to no provision in the Note or Mortgage that requires Defendants to offer her a modification. See Mackenzie, 738 F.3d

---

[4] The Pre-Foreclosure Affidavit states that Wells Fargo complied with Section 35B. (Docket $15-6).

13

at 493 (holding that there is no duty in law to modify a loan in the absence of a contractual provision). Therefore, Bek is not entitled to a declaratory judgment based on a violation of Section 35B.

4. Validity of the October 2, 2017 Assignment

In count IV of the amended complaint, Bek also challenges Wilmington Trust's mortgagee status. She first alleges that, because Ohio Savings Bank, the original lender on the Note, was shut down and placed into receivership on December 4, 2009, the assignments of her Mortgage were invalid because Ohio Savings Bank was a non-existent entity with no capacity or authority to assign, or direct MERS to assign, on its behalf, her Mortgage. (Docket #8 at ¶¶ 13, 34). Bek's argument incorrectly conflates the Note and Mortgage, which are separate documents that can be held by different parties in Massachusetts. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013). As stated on the face of the Mortgage, the original mortgagee was MERS, "acting solely as nominee for [Ohio Savings Bank] and [its] successors and assigns." (Docket #15-2 at 2). "The dissolution of the original lender does not affect MERS' authority to assign a mortgage." Rosa v. Mortgage Elec. Registration Sys., Inc., 821 F. Supp. 2d 423, 431 (D. Mass. 2011); accord Lewis v. Bank of N.Y. Mellon Trust Co., N.A., No. 16-11122-FDS, 2016 U.S. Dist. LEXIS 117446, at *11 (D. Mass. Aug. 31, 2016). "As mortgagee, MERS continue[s] to hold the Mortgage in trust for whomever happen[s] to own the Note." Id. (quotation omitted).

Bek next challenges the Oct. 2, 2017 Assignment alleging that it did not cure the defects associated with the two prior assignments. (Docket #8 at ¶ 36). In the two prior assignments, MERS assigned the Mortgage to "Wilmington Trust Company as Successor Trustee to US Bank National Association as successor in interest to Wachovia Bank, N.A. as trustee for the holders

of Mastr Alternative Loan Trust 2005-3," the incorrect assignee. In the October 2, 2017 Assignment, MERS assigned the Mortgage to "Wilmington Trust Company, not in its individual capacity but solely as successor trustee to U.S. Bank National Association, as trustee, for MASTR Alternative Loan Trust 2005-3," the correct assignee. Bek asserts that because the first two assignments were to a nonexistent entity, they were "the equivalent of an assignment in blank," and have no legal force under Massachusetts law. (Docket #23 at 15-16). Citing United States Bank National Association v. Ibanez, 458 Mass. 637 (2011), she proceeds to argue that the Oct. 2, 2017 Assignment cannot qualify as a confirmatory assignment because there was no prior assignment under Massachusetts law, and therefore, the interest never transferred from its originator. (Id. at 16).

"[T]he foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale[.]" Ibanez, 458 Mass. at 651. "Where the earlier assignment is not in recordable form or bears some defect, a written assignment . . . that confirms the earlier assignment may be properly recorded." Ibanez, 458 Mass. at 654. "A confirmatory assignment, however, cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time." Id. Here, the minor correction of the name of the trust clearly functions as a confirmatory assignment. See Daukas v. Dadouns, No. 13 MISC. 479718 (KCL), 2014 Mass. LCR LEXIS 121, at *1 n.1 (Mass. Land Ct. July 23, 2014) (holding that incorrect assignment to "IndyMac FSB," a nonexistent entity, instead of "IndyMac Bank FSB" or "IndyMac Federal Bank FSB," which was later corrected in a confirmatory assignment of mortgage, did not invalidate foreclosure). It is clear that MERS intended to assign the Mortgage to Wilmington Trust. To hold otherwise would be to make

15

unenforceable any mortgage that contained a typographical error in an assignee's name, an absurd result.

Even if the January 28, 2010 and May 7, 2012 Assignments to the incorrect assignee rendered those assignments void, title would have been effectively transferred to "Wilmington Trust Company, not in its individual capacity but solely as successor trustee to U.S. Bank National Association, as trustee, for MASTR Alternative Loan Trust 2005-3" according to the terms of Oct. 2, 2017 Assignment. See Tucker v. U.S. Bank, N.A., 292 F. Supp. 3d 546, 552 (D. Mass. 2018); Butler v. Deutsche Bank Trust Co. Ams., No. 12-10337-DPW, 2012 U.S. Dist. LEXIS 114196, at *27 (D. Mass. Aug. 14, 2012) ("To the extent the first assignment was void for failure to identify the assignee sufficiently . . . the second assignment would be valid or invalid on its own merits."). Bek received notice of the foreclosure sale of the Property on April 11, 2018, well after the Oct. 2, 2017 Assignment. Hence, a foreclosure would be valid under the Oct. 2, 2017 Assignment operating on its own merits.

For these reasons, count IV of Bek's amended complaint is subject to dismissal.

D.     Count I – Injunctive Relief

In count I of her amended complaint, Bek seeks preliminary injunctive relief. (Docket #8 at ¶¶ 43-47). However, injunctive relief is not a stand-alone cause of action under either Massachusetts or federal law. Payton v. Wells Fargo Bank, N.A., No. 12-11540-DJC, 2013 U.S. Dist. LEXIS 27692, at *18 (D. Mass. Feb. 28, 2013). Therefore, the court allows Defendants' motion to dismiss with respect to count I of the amended complaint.

E.     Motion for Injunctive Relief

To obtain the extraordinary remedy of a preliminary injunction, a plaintiff must establish that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the

absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "The sine qua non of this four-party inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs. v. Sprintcom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). Because Bek's complaint is subject to dismissal, she is not entitled to injunctive relief. See Hicks v. Ryan, No. 13-10709-RGS, 2013 U.S. Dist. LEXIS 66930, at *39 (D. Mass. May 9, 2013) (denying plaintiff's request for temporary restraining order and/or a preliminary injunction as plaintiff had failed to demonstrate a likelihood of success on the merits because his claims were subject to dismissal).

IV. CONCLUSION

For the foregoing reasons, I ORDER that the motion to dismiss (Docket #14) be ALLOWED. Having determined that the case is subject to dismissal, I hereby DENY the motion for injunctive relief (Docket #24).

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE